IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STIRISTA, LLC,

                       Plaintiff,

         v.

SKYDEO INC.,

                 Defendant.

Civil Action No. 1:23-cv-00856-CFC

---

## **MEMORANDUM ORDER**

Plaintiff Stirista, LLC has sued Defendant Skydeo Inc. for unlawful use of Stirista's 123PUSH trademark. D.I. 1. In its Answer, Skydeo asserts the affirmative defense of fair use to all claims. D.I. 8 at 5. Pending before me is Stirista's Motion for Summary Judgment of No Nominative Fair Use. D.I. 61. I will deny the motion.

### I.

Stirista and Skydeo compete in the digital advertising industry. D.I. 64-2 at 53:7–13. Both companies sell customized segments of marketing data through third-party online marketplaces such as LiveRamp and The Trade Desk. D.I. 64-17 ¶¶ 4–6, D.I. 64-2 at 17:6–8, 19:8–19. Skydeo also sells its data segments directly to customers. D.I. 64-2 at 17:6–19:7.

Stirista has sold "123PUSH" data segments since 2019. These segments provide data from approximately 18,000 "syndicated audiences" to help marketers reach potential customers. D.I. 64-17 ¶¶ 5, 6. Stirista filed an application to register a trademark for 123PUSH in July 2023, and the United States Patent and Trademark Office issued Stirista that mark on September 24, 2024. D.I. 64-17 ¶ 7.

Stirista has never sold or licensed its 123PUSH data segments to Skydeo and has never authorized Skydeo to advertise, sell, or license Stirista's 123PUSH segments. D.I. 64 ¶¶ 8, 9; D.I. 83 ¶¶ 8, 9.

From 2021 through November 2024, Skydeo listed on its website over 80,000 data segments, including some of Stirista's 123PUSH segments, in a directory labeled the "Skydeo Data Marketing Platform." D.I. 64-2 at 60:9–61:25, 90:10–91:4, 159:18–162:3; D.I. 64-13. On at least one day during this period— July 31, 2024—123PUSH data segments comprised 14% of the data segments listed in the "Skydeo Data Marketing Platform" directory. D.I. 64-4 at 13. Skydeo's website did not associate 123PUSH with Stirista in any way during this period. D.I. 64-2 ¶ 13; D.I. 83 ¶ 13.

A customer who visited Skydeo's website during this period and clicked on a listing for a 123PUSH segment on Skydeo's "Data Marketing Platform" was directed to a webpage that described the taxonomy of the 123PUSH segment and stated that "123Push makes this segment available for digital targeting" and that

2

"Skydeo offers a free consultation to learn more about your campaign and will recommend the right audiences for you." D.I. 64-5. A "Target this Segment" link then directed the customer to a form to share contact information with Skydeo. D.I. 64-5; D.I. 64-2 at 132:25–135:13. If the customer completed the form, Skydeo reached out to that customer and recommended a data segment that suited the customer's marketing needs. D.I. 64-2 at 127:17–24, 129:5–14, 132:25–133:13.

Skydeo admits that there were potential customers during this period who were "actually confused about ownership of the 123PUSH mark." D.I. 64-9 at 67:15–24. It also concedes that The Trade Desk platform, on which both Stirista and Skydeo offer their products and services, erroneously listed "123push" on its partner directory page as a product offered by Skydeo, and displayed "123push" next to Skydeo's logo, which also served as a link to Skydeo's website. *See* D.I. 64-2 at 197:6–200:3; D.I. 64-8; D.I. 64 ¶ 23; D.I. 83 ¶ 23.

## II.

Stirista alleges in its Complaint that the use of the 123PUSH mark on Skydeo's website constitutes unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a) and common law trademark infringement. D.I. 1 at 10–12. Skydeo has asserted as an affirmative defense to these claims nominative fair use. D.I. 8 at 5.

3

Stirista has moved pursuant to Rule 56 for judgment of nominative fair use. D.I. 61. Under Rule 56(a), a party may seek summary judgment on "part of each claim or defense." Fed. R. Civ. P. 56(a). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat

4

an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587. In reviewing the record, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### III.

Nominative fair use occurs "where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 307–08 (9th Cir. 1992). The parties agree that the key Third Circuit case that addresses nominative fair use is *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3d Cir. 2005). *See* D.I. 62 at 1; D.I. 84 at 5, 6, 11. The court adopted in *Century 21* "a three-pronged nominative fair use test." 425 F.3d at 222. Under that test, to prevail on the affirmative defense of nominative fair use,

> a defendant must show (1) that the use of plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service; (2) that the defendant uses only so much of the plaintiff's mark

5

as is necessary to describe plaintiff's product; and (3) that
the defendant's conduct or language reflect[s] the true
and accurate relationship between plaintiff and
defendant's products or services.

*Id.*

Stirista argues first that it is entitled to summary judgment of no nominative
fair use "[b]ecause there is no genuine dispute that Skydeo's use of the 123PUSH
mark [wa]s not necessary [to describe Skydeo's products and services] and . . . did
not reflect the true and accurate relationship between Stirista and Skydeo's
products or services." D.I. 62 at 2.  I would agree with Stirista but for the
deposition testimony of Skydeo's CEO Michael Ford that Skydeo had a "right to
download data via LiveRamp, any dataset, including 123PUSH[,] . . . put it
together, ship it out, get usage, get revenue, and then report it back to LiveRamp."
D.I. at 67-2 at 188:21–25 (cited in D.I. 67 ¶ 9).  This testimony provides a
sufficient (albeit slim) evidentiary basis for a rational juror to agree with Skydeo
that "its listing of the 123PUSH listing was necessary to advise potential clients
that Stirista had, or has, a data set named 123PUSH and Skydeo could act as a
broker and/or buyer to obtain the data set if a potential customer was interested in
using the data set." D.I. 84 at 7–8 (citing D.I. 67 ¶ 9).  Stirista concedes as much
with respect to the first eleven months Skydeo listed the 123PUSH mark on its
website.  In Stirista's words: "At most, to the extent that Skydeo's LiveRamp
membership entitled it to sublicense Stirista's data segments, that entitlement

6

lasted for only 11 months—the period between the date the Data Marketing Plan went live and the date when Stirista had LiveRamp block Skydeo from accessing its data segments." D.I. 62 at 11 n.3 (citing D.I. 64 ¶ 33). There is therefore a genuine dispute of fact with respect to the necessity-of-use prong of the nominative fair use test. (I note, too, that this dispute may not be limited to an eleven-month period. Although Stirista states in its briefing that "in November 2022, per Stirista's request, LiveRamp affirmatively blocked Skydeo's access to Stirista's data segments," D.I. 62 at 4 n.2, the record evidence Stirista cites in support of this assertion establishes only that Stirista *asked* LiveRamp to block Skydeo from accessing Stirista's data segments. D.I. 64-16. The cited record evidence does not establish that LiveRamp blocked Skydeo's access to Stirista's segments in response.)

Ford's testimony also precludes a finding that Skydeo cannot as a matter of law establish the third prong of *Century 21*'s nominative fair use test. Stirista argues that "Skydeo's conduct does not reflect the true and accurate relationship between Stirista and Skydeo" because "Skydeo is a competitor of Stirista's and is not authorized to advertise, sell, or license 123PUSH® data segments or to broker deals of such sales or licenses." D.I. 62 at 13. But in the very next sentence of its brief, Stirista states that "[a]ny right Skydeo may have had to [advertise, sell, or license 123PUSH® data segments or to broker deals of such sales or licenses]

7

ended in November 2022, yet Skydeo's use of the 123PUSH mark continued for another two years after that." D.I. 62 at 13 (citations omitted). In any event, as just discussed, a rational juror could find based on Ford's testimony that Skydeo "could act as a broker and/or buyer to obtain the [123PUSH] data set [from LiveRamp] if a potential customer was interested in using the data set." D.I. 84 at 7–8 (citing D.I. 67 ¶ 9).

Stirista also argues that it is entitled to summary judgment because Skydeo's use of the 123PUSH mark was excessive and Skydeo therefore cannot meet *Century 21*'s requirement that Skydeo show that it used only so much of Stirista's mark as was necessary to describe Stirista's product. D.I. 62 at 12–13. Stirista, however, has not identified record evidence that establishes that Skydeo used the 123PUSH mark more than was necessary to describe the 123PUSH products; nor has it offered a definition of "excessive" or pointed me to a case in which a court found as a matter of law that a specific number of uses of a mark was (or was not) excessive. Determining whether use of a mark was more than necessary to describe a product is quintessentially a question that only a jury can decide. I cannot say that as a matter of law Skydeo used the 123PUSH mark more than was necessary to "act as a broker and/or buyer to obtain the [123PUSH] data set [from LiveRamp] if a potential customer was interested in using the data set." D.I. 84 at 7–8.

8

* * * *

NOW THEREFORE, at Wilmington on this Seventh day of March in 2025, it is HEREBY ORDERED that Stirista, LLC's Motion for Summary Judgment of No Nominative Fair Use (D.I. 61) is DENIED.

_____
CHIEF JUDGE